Good morning Mr. Southerland I wanted everybody to know and I want to thank the court's IT person. I now have some additional help to hear everybody. They gave me the equivalent of a horn so I can hear everybody. We'll try to speak loudly. If it pleases the court my name is Michael K. Southerland of Michael K. Southerland and Associates and I'm representing the plaintiff in this matter, Lana Canen. Lana Canen was convicted of murder of Helen Saylor who was killed on Thanksgiving Day 2002. She was sentenced to 55 years. She lost 8 years of her life because of the dishonest testimony of the defendant Dennis Chapman who misrepresented his qualifications and wrongfully identified a latent fingerprint. That he should not have been able to even offer an opinion about. Did Mr. Chapman make any false statements as to his experience or was this a situation in which the significance of latent fingerprints versus known fingerprints was missed by defense counsel? That was one of the defendant's arguments that this was not clearly a suppression issue because they failed to ask the right questions or he may have been ambiguous or misunderstood. But Brady requires an affirmative duty. It is mandatory that they produce exculpatory or impeachment evidence. So I do need to get this clear. Is it your position that the government has an obligation to discover and disclose any information about an expert witness that could possibly be used in order to impeach that person? And if you do I would really like to know what support you have for such a broad obligation. That is not our position, your honor. I think when you talk about materiality tests which is the second prong of this court's analysis under Brady, we have to demonstrate that the evidence that would be shown is material to an issue of trial and must be shown that the prosecutor or the police officer suppressed the evidence and failed to provide this exculpatory or rebuttal impeachment or impeachment evidence. And any evidence which goes to the integrity of an expert witness is deemed to be essential and important. It would impact the outcome of a trial. Under Kiles v. Whitley, evidence is material if there is a reasonable probability that the evidence had it been disclosed to defense, the result of the trial would have been different. Can you imagine how simple it would have been for Mr. Chapman to say I've never had any real training, I've never gone to a class, and I'm not certified. And in fact we know that's the reason that he made the mistakes because when he's confronted with this at the hearing for post-conviction relief, the PCR, he admits that the reason he's now changing his mind is because of his training. And when you look at the testimony in our brief that we extracted from the record on page 22 where the prosecutor, Mrs. Becker, says there's no doubt that he had to understand that I was asking about latent fingerprints, that's what the conversation was, that's what we talked about before trial and pre-trial prep, and yet he says he had 100 cases. That's a lie. Because later when he does a deposition he says he has 13, but he doesn't qualify that any of those opinions were offered at trial were examined in cross-examination. So under summary judgment... The question wasn't specific to latent fingerprint experience, though. The prosecutor's question in laying the foundation for his training and experience wasn't specific to his level of experience examining latent fingerprints. It was general. How many fingerprint cases have you handled? Under the Indiana case of Burnett, latent fingerprint examination is a very complex process, and it doesn't just require reading a book, it requires extensive training. And in the Burnett case, a person could qualify for latent fingerprint expert testimony by experience as well as by training. He had none of that. Couldn't all of the evidence of which you complained have been discovered through reasonable diligence, such as by deposing Chapman and asking questions as disqualifications of experience, or by bringing in your own experts? Well, let's just say there's a lot broken in the criminal justice system in Elkhart County. And one of the things that was established was that in the post-conviction relief hearing, Judge Shoemaker specifically found, I don't think it's binding on this court, but it should be given some weight, specifically found that the public defender, Mr. Zook, who is now deceased, did not perform in an ineffective manner. That he was, in fact, an efficient counsel, and therefore, that excused this suppression issue of not being discovered. Judge Lozano says it is a question of fact, since there are some disputes about what was done, what was said, the question of fact should be resolved in favor of the plaintiff. What I'm concerned about, Judge Roedner, is that if Judge Lozano's opinion is allowed to stand, it would mean that any criminal expert witness, criminal prosecution expert witness, would be able to be excused from Brady liability simply by stating that the question was not specifically asked. Or put another way, if he isn't specifically asked at trial by anybody, the prosecution or cross-examination, about his expertise, then he is going to be able to say, that wasn't directly questioned, therefore, I'm not suppressing that information. So is it your belief that there is a constitutional requirement that the government develop all possible avenues of impeachment for a defendant? No, I'm not saying that. That goes to the materiality part. In other words, impeachment by itself does not necessarily mean it would change the outcome. And we have some other cases, which we've cited in our brief, where the person's background, you know, the case where the laboratory technician had a reputation for fabricating evidence, that should have come in. And that was found to be Brady testimony, Brady information that was suppressed. What we're saying is that the prosecutor herself found this to be deceitful. She called it dishonest, and we quote that in the brief. And that he'd no longer contribute to any case in the department, and he'd be prohibited from doing any work, consulting work with surrounding counties. They didn't need to consult Brady case law. They knew when somebody was lying. They knew when somebody was not representing their background. And that's what we have here. It took the investigators nine months to get the material to Mr. Chapman. And they said because the state India crime lab was probably going to take too long. That's nine months. I've never heard of them taking nine months, and they certainly produced it much more quicker when the prosecutor asked it for immediately during the process of the PCR, and they recessed, I think, 30 days and came back and had the information. Furthermore, it was over two years between the time that he had the information and the time it went to trial. That's plenty of time to do this. Was there a case agent in this case? Was there some police officer who acted as a liaison with the prosecutor's office? There was. And why isn't he a defendant here? Because he had no contact with Mr. Chapman, and he had no part in the decision to make Mr. Chapman the expert in this case. Somebody must have decided. Prosecutor. Prosecutor. Prosecutor was presented with this person. She said in her deposition that she had some experience with him in the past. I don't know what that was, but there is no evidence on the record. He offered none, and she gave none, where he was an expert in latent fingerprint examination. And when did this prosecutor decide this whole thing was deceitful? When she was deposed in our 1983 litigation. In the 1983 litigation. Yeah, it's taken a long time to get the truth sometimes, Judge. It took a long time for her maybe to realize that the cat was out of the bag. Well, I think she realized it when they did the PCR, because he changed his mind immediately. He says, I agree with the expert Kathleen Wright Burnham, the expert hired by the PCR attorney. Was there any disciplinary action ever taken against the prosecutor? No. In Indiana, is there a minimum standards or any particular ascertainable standards for an expert in latent prints? Do the law enforcement agencies have any particular standards that one must measure up to before one qualifies as an expert? There are a number of institutes which require certain things to be done to be certified. That involves both training, background, and probably some other things. Now, does the record indicate to us the difference between this individual's, Mr. Chapman's, qualifications and the standards of these various professional groups and institutions? With regard to Kathleen Wright Burnham, yes. With regard to the state police, I don't think there's anything in the record. They simply returned the report that this is not a match. No, no. My question is, there apparently are organizations that have standards, professional standards for certification. Yes. Does our record show how great the disparity is between those standards of those organizations and the qualifications of Mr. Chapman? I think it can be inferred because we have the qualifications of Mrs. Kathleen Wright Burnham, who is a certified latent fingerprint examiner. And not only that, but these are complex latent fingerprints, not just latent fingerprints by themselves. And Mrs. Burnham's qualifications are in the record in what form? Her testimony.  In the? PCR. In the PCR. Now, there was another expert who told Mr. Chapman you did a good job. There was an expert friend who had some experience, who spent less than 30 minutes going over there, an informal observation by Mr. Lumbden, and he offered the opinion that he looked at it, he couldn't say that it was a match, but he couldn't necessarily say it was not a match. Now, my clerk told me not to do this. I'm going to do it anyways. What? My clerk told me not to do this. I'm going to do it anyways. Go join the clerk. Go ahead. Don't pay any attention to him. Go ahead. He has a merit badge and fingerprint analysis from Boy Scouts. He showed me how easy it is to differentiate that with a merit badge. So can you imagine how shocked and dismayed it would be? It's not in the record. In this record. Miss Cannon is. When she consistently refused to admit to any of the crimes, refused to admit to being in the room, and then the only evidence they had to put her in the room was the fingerprint. There was no other forensics. The room was ransacked. There was stuff poured over the body. Nothing forensically produced any evidence to suggest that she was in here or the other co-defendant, Mr. Andy Royer. So if you look at all the evidence, this lady has never even had a parking ticket. She is not that big. And for her to be accused of this is just preposterous. And yet the only evidence the state could produce after almost two and a half years after the crime was to show that there was this little pinky finger that matched. And as soon as Mr. Chapman was confronted with this information in the PCR, he says, I guess you're right. I'm going to change my mind. But that doesn't take away the Brady violation. The court overturned the case not because of the Brady violation but because of the changed opinion and the agreement that everybody had that the latent fingerprint was not that of Miss Cannon. So the law is clearly established that a Brady violation, and we're convinced that there's a Brady violation, we're convinced we meet the three L's. I just do not know where the violation in Brady comes in because Brady, to my knowledge, does not require the government or its witnesses to delineate every qualification or certification that an expert witness could possess but does not, or every possible avenue of cross-examination that would undermine the expert's qualifications. I just am not getting it. Well, I'm convinced that the case law suggests that something that important, Judge, is material. And if it's material, it's a Brady violation. In other words, if he just said, well, I had 200 cases and I only had 100, that would be a slight variation. But when he says, I am an expert, he's asked by the prosecutor, would you give me your expert opinion? He can't be an expert if he doesn't have the training. That's the lie. That's the misrepresentation. Save some time. I will. Thank you. Thank you. Much better hearing. Everybody watch that yellow and red light, please. Otherwise, you make me feel so bad about myself, not giving you more time. All right. Good morning, Mr. Pruitt. Mr. Jordan, Your Honor. Oh, wrong name. Okay. Sorry. Yes, you are. Okay. Go ahead. Thank you. Nathaniel Jordan, here on behalf of Dennis Chapman, defendant at the lead, we ask that you affirm summary judgment because Mr. Chapman did not violate Ms. Cannon's constitutional rights and he's entitled to absolute and qualified immunity. Was Chapman's experience, if we understand it in its entirety, sufficient to allow him to testify as an expert as to the identification of the latent fingerprint in this case? Yes, absolutely. Okay. And why? So in Indiana, the courts have set the 702 bar for experts talking about latent fingerprints or patent fingerprints. Relatively low. In the Burnett case that Mr. Sutherland referred to, the court said, you really only need one of the pieces that Rule 702 of the Indiana Rules of Evidence calls for, which that's similar to the Federal Rule of Evidence textually as it begins, and it's talking about having either knowledge, skill, experience, training, or education. And there the Court of Appeals said that practical experience as a crime scene manager by itself was enough for the officer to come and testify about latent print comparisons. Dennis Chapman worked for the FBI back in the 1970s. He went through the FBI's 12-week identification school, and he was with the FBI for two and a half years. For the two years after going through the school, he then examined and compared fingerprints on a regular basis. Those were patent fingerprints, not latent fingerprints. But the difference between patent and latent fingerprints is a patent fingerprint you can see without doing anything to reveal it, and a latent print is hidden until you do something like dust it or shine a light on it to reveal it. It's a distinctly different function, though, isn't it? You have to do something different, yes, to be able to see the latent print. Once you have it revealed, some latent prints are poor quality. Some are overlaid with other prints, but then some are those that you can use for comparison. On a national basis, is qualification to be able to compare fingerprints on cards held next to each other considered to be a qualification to expound on matching of latent fingerprints? I can speak to Indiana, Your Honor. Tell me nationally. Nationally, yes, and I would say that it's sufficient. I would say that from the standpoint of the International Association for Identification that developed a certification for latent print examiners to be certified in examining latent prints, and IAI itself said that you do not need this certification to testify about latent prints, and that's consistent with Indiana too. They said you don't need, and apparently Indiana said all you've got to do is be a crime scene case manager, according to your brother. That's correct. That's a big difference, isn't it, between being a crime scene case manager and somebody who compares sheet prints to latent prints? You can certainly have differences between people that only do one or only do the other. In Dennis Chapman's case, he had done far more than that. He had his time with the FBI, and then when he came in the 1990s to the Elkhart County Sheriff's Department, he went through the ILEA, Indiana Law Enforcement Academy, training to be a patrol officer. He then dusted and did field work for latent fingerprints on a regular basis doing that. Afterwards, in the late 90s, he became a property crime detective for the Sheriff's Department, and he was asked informally at that time by other members of the department to start doing some comparisons, and after that period, he went in August of 2000 to the Indiana Integrated Crime Scene School, graduated from that, and came back as a crime lab technician for the Sheriff's Department. At that point, he was continuing to examine patent and latent fingerprints. And there was one lecture, is that right, at that course on this particular subject? There was one lecture on latent prints related to the crime scene investigation aspect of it. He, once he came back as a crime lab technician, would actually analyze latent fingerprints and patent fingerprints, more for patent but latent too, for the Sheriff's Department itself and for outside agencies, both for the Goshen City Police Department and the Elkhart City Police Department. He estimates that at the time he was asked to do the latent print examination for the Helen Saylor murder case in Elkhart, city police sent him a series of suspect prints and also prints lifted from the scene. Dennis Chapman estimates that he had done 13 latent print comparisons up to that point in time. Do you know, does the record indicate whether this is the way fingerprint analysis is done in major crime cases throughout the state of Indiana? People with these qualifications do this kind of work? That's the way Indiana does this work? It is if you look at the case law. If you look at the Burnett case. At the what case? At the Burnett case. Yes. Or if you look at the White case where two weeks, the person that testified in a habitual prints case had different kinds of experience but the FBI training was actually a two-week program. Dennis Chapman does better than this under any formulation of the qualification you would need in Indiana to testify under Indiana rule of evidence. But you really can't speak to the national scene as to whether or not in, let's say, the state of Illinois, the state of Wisconsin, would somebody like this be permitted to testify in a major crimes case like this about latent fingerprints? I haven't seen any case to suggest they would not be able to. As a matter of judicial opinion, right? Do you know what the prosecutorial standards are in those states? I don't know prosecutorial standards from state to state, but I know Indiana rule of evidence 702. I know that the text of the rule, the first half of it, is laid out differently but textually matches the federal rule of evidence. And it's my understanding from days of law school, I guess, that lots of different states are using the same or similar rules for that rule of evidence about permitting an expert to testify. This case is not a case where an expert has something negative in his past or present that's going on that he isn't disclosing. One of the most disturbing things here, I think, is the fact that on the stand, when asked, he was guarded and really did inflate his experience. He did not distinguish between matching cards on one hand and dealing with latent fingerprints on another. It wasn't really what we would call forthright testimony, was it? It may not have been perjury, but it wasn't forthright. Your Honor, with respect, we disagree. Dennis Chapman was asked at trial over five pages of testimony. He's introduced on page 612, I believe, of the trial transcript, and then after that testifies for five pages about his experiences in training in response to questions from the prosecutor. The prosecutor actually, when she's going back through his history of work and experience and training, when she gets to the FBI time that he worked at, she makes a statement to the effect that this is what I was wanting to get at. This is patent print experience. There's no reason that Dennis Chapman would think that he was being asked to do something else, to tell about something else, and he answered all of the questions that he was asked honestly. At the end of this portion, there's an exchange where the prosecutor then asks, and this had come up in the prior portion of this oral argument, the prosecutor then asks, okay, at the bottom of page 617 of the trial transcript, and in the lab as a full-time detective technician, is it one of your responsibilities to examine as well as compare fingerprints? Answer, yes, it is. Question, based on your experience, have you been able to make fingerprint comparisons in the past several years? Answer, yes, I have. Question, any idea how many comparisons you've made? Answer, not off the top of my head. I'm sorry, the answer is not right off the top of my head. Several, maybe 100 or so. He has not been asked at all up to this point in time anything about latent prints. He is asked about latent prints for the first time on the next page when the prosecutor is finished asking him about his qualifications. And in this particular litigation, what does the record show? Did anybody place any information in the record in this case as to the disparity between this gentleman's qualifications and either state or national standards? No, not in the record in the sense that there would be a disparity. I'd say the opposite is true from the record, that Dennis Chapman, you can see from the way the Indiana courts have interpreted in 702 as it applies to latent print fingerprint analysis in court, that Dennis Chapman was in fact qualified. That's established. It's only in the case when it moves to the next page and it moves out of the experience and training that the prosecutor then asks Detective Chapman about latent fingerprints and she says, let's talk a little bit about fingerprints. Do you also have training and experience in attempting to recover latent prints from a crime scene? Answer, yes. Question, is that part of your responsibilities at the Sheriff's Department? Answer, yes, it is. And those answers were true also, and then they go on and talk more about latent prints and eventually about Dennis Chapman's analysis in this case. This case, though, as framed, is a case about qualifications, and there is nothing that prevents, there is nothing that prevented Lana Kanan's defense attorney at the point in time that Detective Chapman had finished testifying about his experience and qualifications. If she wanted to make a Rule 702 motion, she could. If she wanted to voir dire Detective Chapman, she could through her counsel. If she wanted to cross-examine him or introduce her own expert, all of those avenues were available to her. Dennis Chapman answered questions honestly at trial, and the prosecutor said what he said at trial is consistent with what he told me before trial. And there's nothing more that was needed. There's no reason for Lana Kanan to assume that he had any experience he didn't testify about. When you ask somebody, what experience do you have, and they tell you, they're telling you both on the record, Detective Chapman is telling the jury on the record both what experience and training he had and implicitly what he did not have. If he did not list something that the criminal defendant and her counsel thought was important, that would be the point in time that they could raise whatever challenge they wanted to or needed to to his testimony. We do not agree with that underlying assumption that Lana Kanan makes that Chapman was unqualified, and we do not agree that a lack of, even if there was a real lack of experience or training by an expert, could be considered Brady evidence. We're not sure in a case like that what the rule would be. The prosecutor speaks to the expert ahead of time to decide whether to use the expert. The prosecutor asks the expert questions about what experience the expert has, and the expert tells the prosecutor. The expert's not, most of the time, not a lawyer themselves, and they may not have read Rule 702, but they answer the prosecutor's questions honestly. What more does the Constitution require the expert to do? Is the expert required to try to talk the prosecutor out of using the expert as a witness? Does the prosecutor have a constitutional duty to only use an expert that the criminal defendant agrees is the strongest possible expert? No, I think the argument that's being made here is that the expert has, in this situation, a Brady duty to disclose the distinction between his level of experience with patent prints and his level of experience with latent prints. That's the argument, and that's, I think, how the district court here understood the argument and decided in the case on qualified immunity grounds that there's not that sort of a specific rule. Brady, of course, is very general, the duty of disclosure, and it's a fact-bound analysis, and if that's the rule that is being argued for here, it's certainly not clearly established and granted qualified immunity on that ground. As I understand your argument, that information, even if it had been disclosed, wasn't material because it wouldn't have disqualified him from giving testimony as an expert under Indiana law. That's correct, Your Honor. We have a suppression issue here and a materiality issue, and it's all viewed through the lens of the qualified immunity analysis, which hasn't been addressed yet, but I think it needs to be. Yes, Your Honor. With respect to qualified immunity, on one level our position is the Constitution wasn't violated by Detective Chapman, even if this happened today. There was nothing clearly established in 2005 that would be any different, that would change the situation any for Detective Chapman. Ms. Cannon, she cited in her briefing at different times the Newsom v. McCabe case out of this court. The only thing that case has in common with this one, with respect, is the word fingerprint. That case is about officers who know that there is something that shows that the prints at a scene of a crime do not match the criminal defendant. They need to disclose that. We understand that rule. There's nothing about Newsom that speaks to the qualifications of an expert witness. Right. That case is about a lie. This case is about a mistake, as I see the distinction, and a mistake that's being attributed to a gap in this expert witness's level of experience. Not that he had no experience, but that he had inadequate experience, and there seems to be a lot of hindsight bias at work here based on what we know now, which is that it was a mistaken fingerprint match. But we have to set that hindsight bias aside to evaluate what his duty was at the time of trial. Yes, Your Honor. And on that note, what Detective Chapman did when he was confronted with Kathleen Bright Birnbaum's report, the expert in the PCR proceeding for Lana Cannon, is exactly what we want officers who have testified about their opinion in a case to do. He looked at the report. He looked at his own analysis, and he decided that his own analysis had been incorrect. He told the prosecutor that. He testified to that in court in the PCR proceedings, which led to the situation here. And so for these reasons, we would ask that you affirm summary judgment in favor of Detective Chapman. Thank you. Mr. Sutherland. I have one minute. Well, we're going to give you another two. Thank you. There is testimony in the record in our brief that Mr. Chapman, when asked, said he did 1,000 latent fingerprints. Which one do you want to choose, 13, 100, or 1,000? He was asked during the deposition, the PCR deposition, do you think this was a lie or a mistake? And he says, probably a mistake, which leaves the alternative, it might be a lie. Where will we find the 1,000 in the record? And take your time. Docket 30-2. I'm sorry, docket? Docket 30-2 at 32. Could you read that, please? He was asked at the deposition taken before the PCR hearing, I'm reading from my brief, Chapman was directly asked how many latent prints he had compared. He answered that he had done over 1,000. When Chapman was asked at the PCR hearing whether his statement that he had done over 1,000 latent fingerprints was a lie or a misunderstanding of the question, his response was, probably a misunderstanding. Either the person has trouble with the English language or he doesn't. It's just amazing how he flips back and forth. And remember that Judge Lozano said in his opinion at Note 3 that he reports that Mr. Chapman has never held himself out as an expert in latent fingerprints. Well, wasn't that what he was called to do, to be an expert in latent fingerprints? Note 3 in Judge Lozano's opinion. So if this opinion is allowed to stand, you're going to see all these police officers called by the prosecution who don't have to volunteer their expertise, and all of a sudden the other side doesn't want to take the risk of examining them out of fear it might bolster their credibility or give better weight to them. Then they're going to be able to say, well, you didn't ask the right question, so I don't have to give it up. And we think that that's the wrong precedent for this circuit to support. It is not necessary that we can't challenge with impeachment evidence a qualified expert. That's the reason you want impeachment evidence. If he wanted to tell the truth and he wasn't disqualified to take the defendant's position, then we could still ask him about how good of an expert he really is. We had no basis for doing that, or at least the public defender didn't. So we believe that if you look at all the evidence there, he deliberately misrepresented himself. The prosecutor, Ms. Becker, said if that's what he was talking about, he was being dishonest, and we cite to that in our brief. We quote her, if she thinks he's dishonest, it's not just an ambiguous misunderstanding. He is deliberately misleading her and the jury. Thank you very much. All right. Thank you very much. Thanks to both sides, and the case will be taken under advisement. Thank you very much.